IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ALVIN THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:12-CV-1080-WKW |
| | ) | (WO–Do Not Publish) |
| TRAVELERS CASUALTY AND | ) | |
| SURETY COMPANY OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This case arises from a subcontractor's failure to receive payment under the terms of a subcontract agreement for work performed on a federal construction project. Plaintiff Alvin Thomas ("Thomas") brought suit against Defendant Travelers Casualty and Surety Company of America ("Travelers"), alleging that he is entitled to compensation under a series of performance and payment bonds issued by Travelers in favor of the United States in connection with the construction project at issue.

Before the court is Traveler's Renewed Motion for Summary Judgment. (Docs. #66, 67.) Thomas has failed to respond or to file any evidentiary materials in opposition to Traveler's motion. Nonetheless, the court must conduct an independent review of the record in light of the familiar standard governing the entry of summary judgment. Having conducted such a review, the court finds that the material facts are undisputed and that Travelers is entitled to a judgment as a matter of law. Accordingly, Travelers's Renewed

1

Motion for Summary Judgment will be GRANTED.

## I.  JURISDICTION AND VENUE

The court properly exercises subject matter jurisdiction over this action pursuant to

28 U.S.C. § 1332 (diversity jurisdiction).  Personal jurisdiction and venue are not contested,

and the court finds adequate allegations in support of both.

## II.  STANDARD OF REVIEW

"[T]he district court cannot base the entry of summary judgment on the mere fact that

the motion was unopposed, but, rather, must consider the merits of the motion."  *United*

*States v. One Piece of Property, 5800 S.W. 4th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th

Cir. 2004).  The court, however, "need not sua sponte review all the evidentiary materials on

file at the time the motion is granted, but must ensure that the motion itself is supported by

evidentiary materials."  *Id.*

Summary judgment should be granted only "if the movant shows that there is no

genuine dispute as to any material fact and that the movant is entitled to judgment as a matter

of law."  Fed. R. Civ. P. 56(a).  Under Rule 56, the moving party "always bears the initial

responsibility of informing the district court of the basis for its motion."  *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence

showing there is no genuine dispute of material fact, or by showing that the non-moving

party has failed to present evidence in support of some element of its case on which it bears

the ultimate burden of proof.  *Id.* at 322–23.  "[T]he court must view all evidence and make

all reasonable inferences in favor of the party opposing summary judgment."  *Haves v. City*

*of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).

If the moving party meets this burden and demonstrates the absence of any genuine dispute of material fact, the burden shifts to the non-moving party to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his or her case exists. *Celotex*, 477 U.S. at 324; *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); Fed. R. Civ. P. 56(e) ("If a party fails to properly supports an assertion of fact or fails to properly address another party's assertion of fact as required . . . the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."). A genuine factual dispute exists if "a reasonable jury could return a verdict for the non-moving party." *Damon v. Fleming Supermarkets, Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999) (internal quotation marks and citation omitted).

## III.  FACTS AND PROCEDURAL HISTORY

On or before December 15, 2005, Thomas entered into an oral contract with Thorington Electrical and Construction Company ("TECC"). The United States had previously hired TECC as the general contractor for a series of federal construction projects at Maxwell Air Force Base in Montgomery, Alabama. TECC employed Thomas as a subcontractor to perform the drainage work associated with one of the projects—the construction of a new entry control facility at the Bell Street gate. In accordance with federal law, TECC engaged Travelers to issue a series of performance and payments bonds in favor of the United States for the Maxwell Air Force Base construction projects.

According to documents submitted by Thomas to Travelers, Thomas began performing under the subcontract agreement in December 2005.  In filing his claim with Travelers, Thomas represented that he continued work on behalf of TECC until January 26, 2006.[1]  TECC paid Thomas $90,969.47 over the course of several months for work performed under the subcontract agreement.  Ultimately, however, TECC refused to continue making payments, and Thomas brought suit on January 18, 2008, in the Circuit Court of Montgomery County, Alabama to recover the balance still purportedly owed to him.  On October 20, 2008, the Montgomery Circuit Court entered judgment in favor of Thomas and ordered TECC to pay Thomas the remaining $99,172.77 owed under the subcontract agreement.  As of the date of this Memorandum Opinion, TECC has yet to tender payment to Thomas in accordance with the state court judgment.[2]

On September 22, 2008, Thomas gave notice to Travelers that he intended to file a claim on the payment bonds Travelers had issued for the construction projects at Maxwell Air Force Base.  On September 23, 2008, Travelers notified Thomas that he had not supplied enough information to establish liability under the bonds and requested that Thomas furnish Travelers with a completed claim form and supporting documents.  On February 19, 2009, Thomas submitted a completed claim form and the October 20, 2008 state court judgment

---

[1] Thomas has provided varying dates as to when he last furnished materials for or performed work on the project.  For purposes of this Memorandum Opinion, the court will analyze Thomas's claim using January 26, 2006, as the final date Thomas performed work for TECC.  (Ex. A to Doc. #67-1.)

[2] TECC's owner, Kelvin Thorington, filed Chapter 13 Bankruptcy on August 12, 2011. (Doc. #56.)

against TECC.  That same day, Travelers requested that Thomas submit an original, certified copy of the claim form he had previously submitted to Travelers.

On February 24, 2009, Travelers sent Thomas an initial review of his non-certified claim form and notified him of his failure to supply Travelers with all the requisite information, including, but not limited to, the date he began work and the date he last worked on or furnished materials for the project.  In response, Thomas emailed Travelers on April 16, 2009, with additional documentation supporting his claim.  On August 28, 2009, Travelers notified Thomas that it was denying his claim pursuant to the terms of the Miller Act, 40 U.S.C. §§ 3131–3134.  Travelers further explained that it was also denying Thomas's claim due to his failure to supply Travelers with all of the documentation it requested on February 24, 2009.  Believing that his claim was wrongfully denied, Thomas brought suit against Travelers in this court on December 12, 2012, seeking the $99,172.77 still owed to him pursuant to the October 20, 2008 state court judgment against TECC.

## IV.  DISCUSSION

Pursuant to the Miller Act, a prime contractor must furnish to the United States government performance and payment bonds before he or she may be awarded any government contract for the "construction, alteration, or repair of any public building or public work" valued at more than $100,000.  40 U.S.C. § 3131(b).  Congress enacted the Miller Act's predecessor—the Heard Act—in 1894 to "protect those whose labor and materials go into public projects."  *United States ex rel. Sherman v. Carter*, 353 U.S. 210, 216 (1957).  The Miller Act, which replaced the Heard Act in 1935, only furthered that

5

congressional intent, preserving the Act's substantive protections while extending its coverage to those that supplied "labor and materials in the prosecution of the work provided for" in federal contracts. *J.W. Bateson Co. v. United States ex rel. Bd. of Trustees of the Nat'l Sprinkler Indus. Pension Fund*, 434 U.S. 586, 599–600 (1978). Since its enactment, the Miller Act and its predecessor, the Heard Act, have been construed liberally by courts to give proper effect to its "highly remedial nature." *Id.* (highlighting the fact that subcontractors performing on federal construction projects are in need of such protections as they work without the benefit of state mechanics' liens).

While those seeking recovery under the Miller Act have the benefit of its liberal construction, it is well-settled that a plaintiff must comply with the applicable conditions precedent before it can avail itself of a remedy under the Miller Act. *See, e.g.*, *Fleisher Eng'g Co. v. United States ex rel. Hallenbeck*, 311 U.S. 15, 18–19 (1940). One condition precedent relates to a civil action's temporal proximity to the federal construction project. More specifically, subsection 4 of the Miller Act provides that "[a]n action . . . must be brought no later than one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action." 40 U.S.C. § 3133(b)(4).

In a vein similar to that of the United States Congress, the State of Alabama has enacted what is commonly referred to as "Alabama's little Miller Act." Ala. Code § 39-1-1 (1975). Similar to the Miller Act, Alabama's version encompasses construction projects where an individual contracts to do work on behalf of a State authority. *See Safeco Ins. Co. of Am. v. Graybar Elec. Co.*, 59 So. 3d 649, 655 (Ala. 2010). However, unlike the federal

6

Miller Act, Alabama's little Miller Act requires that a civil action be brought "not later than one year from *the date of final settlement of the contract*." Ala. Code § 39-1-1 (1975) (emphasis added).

Both parties agree that the Maxwell Air Force Base construction project, which Thomas worked on as a subcontractor, is properly characterized as a federal project. Still, Thomas attempts to take advantage of the filing deadlines of Alabama's little Miller Act because it would provide a more favorable outcome for his claim. However, because the payment bonds at issue here were indisputably issued on behalf of the United States pursuant to federal law, the federal Miller Act, including its filing deadline, applies, and because there is no dispute that Thomas has not furnished materials for or performed work on the project since January 27, 2006, his claim is time-barred.[3] Thus, Travelers is entitled to a summary judgment in its favor.

## V. CONCLUSION

Based on the foregoing, it is hereby ORDERED that Defendant Travelers Casualty and Surety Company of America's Renewed Motion for Summary Judgment (Doc. #66) is GRANTED, and Plaintiff Alvin Thomas's Complaint (Doc. #1) is DISMISSED with prejudice.

---

[3] Indeed, Thomas did not initiate the claims process with Travelers until approximately 31 months after he last furnished materials for or performed work on the Maxwell Air Force Base subcontract, and he did not initiate this lawsuit until a full six years had passed since he last performed under the subcontract at issue.

A separate final judgment will be issued in accordance with this Memorandum Opinion and Order.

DONE this the 16th day of September, 2014.

_____ /s/ W. Keith Watkins _____
CHIEF UNITED STATES DISTRICT JUDGE